# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | | |
|---|---|---|
| Byrlene Lowery, as Personnel Representative of the Estate of Mark James Lowery, Jr, | ) ) ) ) | C/A: 2:23-cv-2517-CMC-MGB |
| Plaintiff | ) ) ) | **COMPLAINT** (42 U.S.C. § 1983) (Jury Trial Demanded) |
| v | ) ) | |
| Schanen Davis, Juana Washington, MHO Gill, | ) ) ) | |
| Defendants | ) | |

Plaintiff named herein, complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

## JURISDICTION

1. This action is an action for money damages brought pursuant to 42 U.S.C.A. §§ 1983, et seq., and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against Defendants.

2. Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A. §§ 2201 and 2202.

## PARTIES

3. The Plaintiff, Byrlene Lowery, is a citizen and resident of the County of Clarendon, South Carolina. Additionally, she is the duly appointed Personal Representatives of the Estate of Mark James Lowery, Jr., having been so appointed by the Clarendon County Probate Court on the 1st day of April, 2022, under Case No. 2022ES1400119.

4.      This suit is filed on behalf of the heir(s) of Mark James Lowery, Jr.

5.      Upon information and belief (during the time periods set out below), Defendant Schanen Davis was a correctional officer who had direct contact with the decedent and/or had direct knowledge of the substantial risk to the decedent's safety and health. This Defendant had the obligation and opportunity to protect the decedent from physical harm. Additionally, during the time period in question, the decedent's constitutional rights were well established and well known to the Defendant listed above. This would include, and not be limited to, the decedent's right to emergent medical care and to be free from cruel and unusual punishment. This Defendant was consciously and deliberately indifferent to the safety of the decedent by knowingly exposing the decedent to a substantial risk to his physical safety. A more detailed description of her contact with the decedent and knowledge of the substantial risks are set out below.

6.      Upon information and belief (during the time periods set out below), Defendants Juana Washington and MHO Gill were mental health officers who had direct contact with the decedent and/or had direct knowledge of the substantial risk to the decedent's safety and health. These Defendants had the obligation and opportunity to protect the decedent from physical harm. Additionally, during the time period in question, the decedent's constitutional rights were well established and well known to the Defendants listed above. This would include, and not be limited to, the decedent's right to emergent medical care and to be free from cruel and unusual punishment. These Defendants were consciously and deliberately indifferent to the safety of the decedent by knowingly exposing the decedent to a substantial risk to his physical safety. A more detailed description of their contact with the decedent and knowledge of the substantial risks are set out below.

7.     The allegations set forth in this Complaint occurred in Richland County; therefore, venue is proper in this District.

**FACTS**

8.     Prison officials a have federal constitutional duty (under the 8th Amendment) to protect inmates from violence at the hands of other prisoners. In this case the Plaintiff is informed and believes that (a) prison officials knew that the decedent was exposed to a substantial risk of serious harm to his physical safety; (b) the Defendants failed to take reasonable measures to abate the risk; and (c) the decedent suffered serious injuries as a direct result thereof.

9.     The Plaintiff is informed and believes that the correctional staff (to include and not be limited to C/O Davis, MHO Washington and MHO Gill) at the Kirkland Correctional Institution had entered into a pattern and practice of failing to provide the adequate and/or specific number of properly trained officers at numerous locations throughout the facility. Further, these Defendants knew or should have known that their conscious failure to provide adequate security measures would result in unsafe conditions for the Kirkland inmate population – to include and not be limited to allowing illegal contraband (such as weapons) on the premises and failing to recognize an inmate (such as the decedent) with a serious medical condition requiring emergent medical care.

10.    Prior to the events in question, each of the individual Defendants had received training to recognize when an inmate had a serious medical condition which required emergent medical care. Additionally, these Defendants had received training that required them to ensure that the inmates needing such medical care received it in an emergent fashion. In this case, the Defendants consciously failed to take the actions they were trained to provide. Further, even without training, the individual Defendants who had actual contact with the decedent or who

supervised others who had contact with him should have easily been able to recognize that the decedent had a serious medical condition which required emergent medical care.

11.     On or about June 26, 2019, the decedent was transferred into the care and custody of Kirkland Correctional Institution – which is part of the South Carolina Department of Corrections. The decedent had been in the custody of Broad River Correctional Institution prior to this transfer. He remained in the custody of Kirkland Correctional Institution until his death on December 26, 2021. During the time period in question (while located at Kirkland CI), the decedent was placed in the F-1 Unit, B-Wing. Additionally, during this time the Defendants either worked in or supervised others who worked in and were responsible for the safety of the inmates who were housed in the F-1 Unit – to include the decedent.

12.     Upon information and belief, Kirkland Correctional Institution is classified as a level three (3) correctional institution denoting that it is a maximum-security facility. Additionally, prior to the events involved in this incident, this facility had a long history of overcrowding and failure to provide adequate security and supervision over the inmate population located at the facility. Specifically, just prior to and during the time period in question, the Defendants (to include and not be limited to C/O Davis, MHO Washington and MHO Gill) consciously failed to provide the adequate and/or proper numbers of adequately trained security personnel at numerous locations throughout the facility (to include the F-1 Unit). Further, all of the Defendants knew or should have known that their conscious failure to provide adequate security measures would result in unsafe conditions for the inmate population – to include the type of event which occurred on June 18, 2020 (involving the decedent).

13.     Prior to the incidents in question, the individual Defendants were well aware of the existence of competing gangs within its facility and, equally aware of the potential for outbreaks

of violence within the inmate population when left unsupervised at Kirkland Correctional (to include F-1 Unit). Further, these Defendants were well aware that the F-1 Unit was extremely dangerous and housed the most violent offenders and/or numerous gang members. Additionally, the Defendants were well aware that medical staff would not respond to this unit for any medical emergency unless all inmates were locked down within their cells. Therefore, inmates located in F-1 in need of emergent medical care were usually not seen unless they walked over or were physically taken to the medical unit.

14. Prior to the incidents in question, it was well known to these Defendants that a large percentage of its inmate population carried and/or had access to weapons, including shanks, to inflict physical harm. Further, these Defendants knew or should have known that their conscious failure to provide adequate monitoring and security measures would result in unsafe conditions for the inmate population – to include the type of incident which occurred on June 18, 2020 in the F-1 Unit involving the decedent.

15. The Plaintiff is informed and believes that prior to the incident in question, the Defendants were aware that prior investigations conducted by SCDC revealed repeated arguments, assaults and fights occurring within the Kirkland Correctional Institution making it one of the most dangerous of the SCDC facilities. These incidents and investigative reports created by these events (prior to the incidents in question) were well known to these Defendants – thus giving them ample knowledge of the dangerous risk of harm to inmates when they were left unsupervised, unmonitored and unprotected.

16. Instead of ensuring that more properly trained correctional officers were assigned to the higher risk areas (such as the F-1 Unit), the Defendants (to include and not be limited to C/O Davis, MHO Washington and MHO Gill) consciously and consistently allowed the substantial

dangers to continue (as indicated above) - with no regard to the safety of the inmates (to include the decedent). In fact, these Defendants consciously failed to take even the slightest measures to alleviate the risk of harm to the decedent.

17.    The Plaintiff is informed and believes that prior to the incidents in question, all of the individual Defendants were working in the F-1 Unit during their shifts (prior to the incident in question) and became keenly aware of the mental instability of the inmates, abundance of weapons, the need for additional staff, and the overall dangerous, unsafe conditions located in the F-1 Unit. Specifically, inmates assigned to this Unit were in the Choices Mental Health Program. These are inmate/patients suffering from serious and/or persistent mental illness and require intensive mental health treatment, monitoring and care. Further, this was not a lockdown unit – meaning inmates were not kept within their cells during the day and were allowed to roam freely within the unit. The Plaintiff is informed and believes that the inmates located in this Unit (to include the decedent) were transferred from other facilities because they could not be properly treated and monitored at any other location within the SCDC system, to include the SCDC area mental health facilities.

18.    Additionally, prior to the incidents in question, the Plaintiff is informed and believes that just prior to the incidents in question the Defendants were aware that certain inmates were causing security and safety problems within the F-1 Unit – specifically by yelling, cursing and causing a disturbance. However, these Defendants (to include and not be limited to C/O Davis, MHO Washington and MHO Gill) consciously failed to take any action to safeguard the decedent to include removing the aggressive inmates from the F-1 Unit and/or placing them in lockdown.

19.    On June 18, 2020, prior to 9:50am, as the decedent was sitting on the F-1 B-Wing Rock watching TV, Defendant Gill got into a verbal altercation with inmate William Salmon who was coming on to the B-Wing of the F-1 Unit from the recreation field. At this time there was only

one security officer (C/O Davis) working both wings of the F-1 unit. Defendant Davis was standing nearby watching the escalating situation and took no action whatsoever. Inmate Salmon eventually walked up the stairs to the second tier where he began yelling and threatening another inmate who was locked within a cell before finally leaving the unit to go back onto the rec field. Defendants Davis and Gill consciously failed to initiate action and to discipline and take inmate Salmon into custody which was a direct violation of SCDC policy and procedure. Had the Defendants Davis and Gill properly disciplined and/or locked down inmate Salmon, it would likely have prevented the violent assault which occurred later that day.

20.     On June 18, 2020, at approximately 10:00am, Defendants Washington and Davis document that they witnessed inmate Salmon come back onto the F-1 B-Wing from the rec yard, aggressively yelling and cursing at other inmates. They did nothing. Instead, they watched as inmate Salmon walked up to the decedent (who was still quietly watching TV on the Rock) and violently attack him. As a direct result of this attack, the decedent was severely beaten and eventually lost consciousness.

21.     As a direct result of the above physical violence, the decedent had to be transported to Prisma Health Richland medical facility where he received treatment for multiple extensive facial fractures which required surgical intervention and his jaw to be wired shut. Up until the time of his death, the decedent continued to suffer both mentally and physically from permanent scarring, deformity, disfigurement, pain, paranoia, fear, and nightmares.

22.     During this period of time the Defendants C/O Davis, MHO Washington and MHO Gill in their capacity as security personnel (whose primary duties were to ensure the health and safety of the inmates located at Kirkland Correctional) failed to protect these inmates from an

obviously dangerous environment which was created by the lack of security personnel and safety measures.

23. Additionally, the Defendants had a Federal Constitutional duty to protect inmates from violence at the hands of other persons when they knew or should have known that certain conditions presented a substantial safety risk. At all times relevant, the Defendants were not only on site at the facility, but they were well aware that the units in question were understaffed and contained personnel who were not properly trained. They were also well aware that this created a highly dangerous situation for all inmates located in that area. Even though they had the opportunity and obligation, they consciously failed to take any steps to ensure the inmates' safety.

24. Additionally, after suffering the injuries incurred in the attack, the decedent was denied immediate medical assistance. The Defendants conscious failure to provide medical assistance directly caused and/or contributed to the Plaintiff/decedent's pain and suffering.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**

25. Each and every allegation of fact contained in the Paragraphs above is re-alleged herein, as if re-stated verbatim.

26. The Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as correctional officers and/or supervisors who had certain duties imposed upon them with regard to the decedent. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to be free from cruel and unusual punishment.

27. The Defendants were consciously and deliberately indifferent to the decedent and acted in egregious and arbitrary conduct during the time period mentioned in the facts in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious need of medical treatment which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to use even slight care and caution in safekeeping the decedent;

(c) in knowingly, deliberately and consciously denying appropriate immediate medical care to the decedent;

(d) in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or immediate treatment;

(e) in consciously failing to provide immediate medical assistance to the decedent when they knew or should have known that he was in such a state that he was unable to care for himself;

(f) in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's condition;

(g) in abandoning the decedent when he was in desperate need for immediate medical care;

(h) in consciously and deliberately allowing gross overcrowding at the Kirkland Correctional Institution;

(i) in consciously and deliberately failing to provide the appropriate number of correctional staff at the various locations in Kirkland Correctional Institution (to include the F-1 unit);

(j) in consciously and deliberately failing to provide adequate and appropriate security officers at the Kirkland Correctional Institution including the F-1 unit;

(k) in consciously and deliberately failing to properly monitor the inmates (mainly the decedent) at the Kirkland Correctional Institution including the F-1 unit;

(l) in consciously and deliberately failing to protect the decedent from an assault;

(m) in consciously and deliberately failing to properly supervise the employees so as to ensure the safety of the inmates located at the Kirkland Correctional Institution;

(n) in consciously and deliberately failing to protect the decedent from serious harm;

(o) in consciously and deliberately failing to provide any level of security in the F-1 unit of the Kirkland Correctional Institution after allowing numerous known violent inmates to congregate there;

(p) in consciously and deliberately failing to recognize a clearly dangerous situation after multiple events providing notice;

(q) in consciously and deliberately failing to take any action to prevent inmates from becoming severely injured after multiple events providing notice of danger;

(r) in consciously and deliberately failing to properly investigate violent incidents which occurred at the Kirkland Correctional Institution;

(s) in consciously and deliberately failing to adhere to the policies and procedures of SCDC;

(t) in being consciously and deliberately indifferent to the decedent's health and safety; and

(u) in being consciously and deliberately indifferent to the decedent's health and safety after having knowledge of the dangerous condition and failing to take reasonable measures to prevent it from occurring.

28. As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally, and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth and Eighth Amendment to the <u>United States Constitution</u>.

29. As a result, the decedent suffered conscious pain, mental and physical suffering, indignity, and loss of his aforementioned federal rights. The decedent suffered from the effects of the Defendants' actions until the time of his death on December 26, 2021, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A SECOND CAUSE OF ACTION**
**<u>VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983</u>**
**(14TH AMENDMENT – DUE PROCESS VIOLATION)**

30. Each and every allegation of fact contained in the Paragraphs above is re-alleged herein, as if re-stated verbatim.

31. The Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as correctional officers and/or supervisors who had certain duties imposed upon them with regard to the decedent. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional

rights, including his right to due process.

32. The Defendants were consciously and deliberately indifferent to the decedent and acted in egregious and arbitrary conduct during the time period mentioned in the facts in the following particulars:

(a) in consciously and deliberately allowing gross overcrowding at the Kirkland Correctional Institution;

(b) in consciously and deliberately failing to provide the appropriate number of correctional staff at the various locations in Kirkland Correctional Institution (to include the F-1 Unit);

(c) in consciously and deliberately failing to provide adequate and appropriate security officers at the Kirkland Correctional Institution including the F-1 Unit;

(d) in consciously and deliberately failing to properly monitor the inmates (mainly the decedent) at the Kirkland Correctional Institution including the F-1 Unit;

(e) in consciously and deliberately failing to protect the decedent from an assault;

(f) in consciously and deliberately failing to properly supervise the employees so as to ensure the safety of the inmates located at the Kirkland Correctional Institution;

(g) in consciously and deliberately failing to protect the decedent from serious harm;

(h) in consciously and deliberately failing to provide any level of security in the F-1 Unit of the Kirkland Correctional Institution;

(i) in consciously and deliberately failing to recognize a clearly dangerous situation after multiple events providing notice;

(j) in consciously and deliberately failing to take any action to prevent inmates from becoming severely injured after multiple events providing notice of danger;

(k)   in consciously and deliberately failing to adhere to the policies and procedures of SCDC;

(l)   in being consciously and deliberately indifferent to the decedent's health and safety;

(m)   in being consciously and deliberately indifferent to the decedent's health and safety after having knowledge of the dangerous condition and failing to take reasonable measures to prevent it from occurring;

(n)   in consciously failing to properly classify the decedent;

(o)   in consciously failing to house the decedent in a proper unit;

(p)   in intentionally housing the decedent in a dangerous location;

(q)   in intentionally housing the decedent in a location which exposed him to a substantial risk of harm;

33.   As a direct and proximate result of the Defendants' acts of conscious and deliberate indifference, jointly, severally, and in combination thereof, the decedent suffered deprivation of his rights secured by the Fourteenth Amendment to the United States Constitution.

34.   As a result, the decedent suffered conscious pain, mental and physical suffering, indignity, and loss of his aforementioned federal rights.  The decedent suffered from the effects of the Defendants' actions until the time of his death on December 26, 2021, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

WHEREFORE, the Plaintiff prays judgment against the Defendants, both jointly and severely, for ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, to be determined by a competent jury and for reasonable attorney's fees and the costs of this action.

|  |  |
|---|---|
| | _s/ C. Carter Elliott, Jr._ |
| | C. Carter Elliott, Jr. |
| | U.S.D.C. Bar #: 5423 |
| | Elliott, Phelan, Kunz & Slocum, LLC |
| | P.O. Box 1405 |
| | Georgetown, SC  29442 |
| June 7, 2023 | (843) 546-0650 (phone) |
| | (843) 546-1920 (fax) |
| | carter@elliottphelanlaw.com |

14